IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:16-CV-20-BO

| | |
|---|---|
| RONALD L. PIERCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **O R D E R** |
| ) | |
| ANNE M. GARMON, *et al.*, ) | |
| ) | |
| Defendants. ) | |

This matter comes before the Court on defendant's motion to dismiss, made pursuant to Rule 12 of the Federal Rules of Civil Procedure [DE 39], plaintiff's motion for leave to file a second amended complaint [DE 76], and plaintiff's motion for sanctions [DE 84]. All motions are ripe for adjudication. For the reasons stated below, defendant's motion to dismiss is granted and plaintiff's motions are denied.

BACKGROUND

Plaintiff is an individual engaged in the roofing repair business in North Carolina. Plaintiff owned disaster services and construction companies that repaired damaged houses, usually from hail and other storms. [DE 35 at 4]. Plaintiff states that he "made it his business to thoroughly inspect these damaged roofs and provide realistic and good faith estimates to homeowners." *Id.* When repairing storm-damaged roofs for homeowners, plaintiff would, in lieu of direct payment from the homeowner, receive compensation directly from insurance companies either under a written assignment of post-loss claim with the homeowners' insurance policies, or through a licensed public adjuster, working for plaintiff. *Id.* Plaintiff stated that insurance

companies "were all quoting homeowners estimates for roof repair for storm-damaged roofs, which were grossly inadequate to cover the costs of repair." *Id.* at 12.

As a result of this business, the North Carolina Department of Insurance ("DOI") investigated whether plaintiff was acting in the capacity of a public adjuster and being a middleman regarding claims of policyholders against their insurance company, without being licensed as such. *Id.* at 5-7.

Plaintiff was arrested in June of 2014 on 108 counts of allegedly obtaining money or property by false pretenses. *Id.* at 8. Less than one year later, all charges were voluntarily dismissed by the District Attorney due to insufficient evidence to prosecute. *Id.* at 9, 12.

Plaintiff alleges that his arrest was unlawful and without cause. *Id.* at 8. He alleges that there was no basis for his arrest, and that the DOI was pressured by insurance companies to arrest him in order to harass, intimidate, and shut down his business. *Id.* Specifically, plaintiff states that "partly because of [his] numerous, caustic, accusatory, and annoying administrative complaints to the Department of Insurance, and partly because of the insurance industry's dismay at watered-down profits, the Department decided to 'shut [Plaintiff] down.' Arresting Plaintiff on 108 felony counts appeared to Defendants to be a way to appease the insurance industry and put Plaintiff out of business." *Id.* at 12.

The warrants charge that plaintiff wrongfully obtained checks from insurance companies. Certified copies of the criminal warrants against plaintiff show that in each case the magistrate found "that there is probable cause to believe that on or about the date of offense shown and in the county named above, the defendant named above [Ronald Leonard Pierce] unlawfully, willfully and feloniously did knowingly and designedly, with the intent to cheat and defraud, obtain US currency check [check number] [check dollar amount] from [Insurance Company

2

name] by means of a false pretense which was calculated to deceive and did deceive. The false pretense consisted of the following: Defendant deposited insurance check into his business account without proper endorsement." [DE 32-1, 32-2, 32-3, 32-4].

Plaintiff filed a corrected complaint on February 26, 2016. [DE 3]. On May 2, 2016, the defendants filed a motion to dismiss the corrected complaint. [DE 32]. Plaintiff, instead of filing a response to the May 2, 2016 motion to dismiss, filed his first amended complaint on May 18, 2016. [DE 35]. The first amended complaint, among other things, added insurance companies Nationwide, State Farm, Safeco, and Farm Bureau as new defendants. [DE 35 at ¶ 11]. Plaintiff subsequently moved to voluntarily dismiss those very same insurance defendants as well as two other individual defendants. [DE 82].

On June 8, 2016 defendants filed the instant motion to dismiss. [DE 39]. On August 22, 2016, plaintiff filed a motion for leave to file second amended complaint. [DE 76]. The proposed second amended complaint seeks to add Ben Tesh as a new individual defendant. *Id.*

On September 16, 2016, plaintiff filed a motion for sanctions under Rule 26(g) of the Federal Rules of Civil Procedure. [DE 84].

DISCUSSION

Plaintiff brought suit against individual defendants under 42 U.S.C. § 1983, alleging a violation of his rights under the United States Constitution. Section 1983 provides a method for vindicating rights enshrined in the Constitution. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As a basis for this claim, plaintiff alleges that the individual defendants investigated and arrested him without cause, and thereby violated his constitutional rights.

3

*Motion to Dismiss*

The Court first considers defendants' motion to dismiss. In considering a motion to dismiss pursuant to Rule 12(b)(6), or in conducting a futility review, the Court may consider documents attached to the complaint, as well as those attached to the motion to dismiss so long as they are integral to the complaint and authentic. Fed. R. Civ. P. 10(c); *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007); *Philips v. Pitt County Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). A court ruling on a motion to dismiss under Rule 12(b)(6) may properly take judicial notice of matters of public record. *Sec'y of State for Defence*, 484 F.3d at 705.

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must be dismissed if the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. The complaint must plead sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court need not accept the plaintiff's legal conclusions drawn from

the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Plaintiff's claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort. To state such a claim, a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012).

Probable cause has been defined as the existence of such facts and circumstances, known to the officer at the time of arrest, as would induce a reasonable person to commence a prosecution. *Best v. Duke Univ.*, 448 S.E.2d 506, 510 (1994). Probable cause exists when the facts and circumstances within an officer's knowledge and of which he had reasonably trustworthy information would be sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense. *State v. Biber*, 712 S.E.2d 874, 879 (2011). Probable cause is not eliminated based on an after-the-fact decision by the State not to prosecute a particular claim or by a conclusion by a court that a defendant is not guilty. *Adams v. City of Raleigh*, 782 S.E.2d 108, 114 (2016). The validity of the arrest does not depend on whether the suspect actually committed a crime; the fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. *Michigan v. De Fillippo*, 443 U.S. 31, 36 (1979).

Accepting only properly pled factual allegations, plaintiff's complaint essentially provides the following narrative: Plaintiff was engaged in roofing repair business, and always did his work satisfactorily and completely. Plaintiff, in exchange for an assignment of insurance claims by homeowners, would repair roofs and subsequently charge insurance companies

directly. Plaintiff opposed and antagonized insurance companies who would under-compensate homeowners by filing claims for correct amounts. The insurance companies, unhappy with plaintiff, used their apparent influence over the DOI to initiate a corrupt fabrication of charges against plaintiff, leading to his arrest. Later, those charges were dismissed due to insufficient evidence to convict.

Even reading the complaint in the light most favorable to plaintiff, the Court is not persuaded that plaintiff has pled sufficient facts that would allow the Court to draw the reasonable inference that defendants are liable for misconduct alleged. The amended complaints are sparse on actual factual allegations of misconduct on the part of defendants. Additionally, plaintiff's complaint largely consists of conclusory allegations or rote legal statements, which under the pleading standards set out by the Supreme Court in *Twombly* and *Iqbal* add nothing to make plaintiff's allegations more facially plausible.

The Court first notes that the fact that the charges were dismissed does not in itself make plaintiff's claims plausible. First, the District Attorney's voluntary dismissal of the charges against plaintiff does not establish that there was no probable cause for the arrest. Under North Carolina law, probable cause is not eliminated based on an after-the-fact decision by the State not to prosecute a particular claim or a conclusion by a court that a defendant is not guilty. *Adams v. City of Raleigh*, 782 S.E.2d 108, 114 (2016). The fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest. *Michigan v. De Fillippo*, 443 U.S. 31, 36 (1979). Additionally, the Court notes that the dismissals were not due to lack of probable cause for the arrest but because of lack of evidence of fraudulent intent.[1] As

---

[1] The dismissals stated: "There is insufficient evidence to warrant prosecution for the following reasons: No evidence putting defendant at the bank depositing the check or depositing via mobile

6
Case 4:16-cv-00020-BO Document 93 Filed 12/13/16 Page 6 of 14

such, the fact that the charges against plaintiff were ultimately dismissed has little probative weight in determining whether plaintiff was arrested without probable cause that he had committed a crime. Instead, the Court must look to the circumstances of the arrest and the evidence known to the State at that time to determine whether plaintiff was improperly arrested in violation of his rights under the Fourth Amendment.

Plaintiff alleges a conspiracy between the insurance industry and the Department of Insurance as an explanation for his targeting and invalid arrest. Plaintiff claims that the insurance companies were angry that he was exposing them for underpaying and making them pay appropriate amounts for roofing repairs, and thus the insurance companies pressed upon the DOI to harass and eventually arrest plaintiff.[2] This is a serious claim, and plaintiff has not pled sufficient to make this plausible. He alleges no statements, circumstances, experiences that occurred to plaintiff or that are in plaintiff's knowledge that would support these claims that the insurance industry was "out to get him," that the insurance industry has a corrupting influence over the DOI, or that the DOI arrested plaintiff illegally and without cause, even though such an arrest would put their own reputations or careers at stake if exposed. This is a fantastic set of conclusions plaintiff has asked the Court to make, and he has asked the Court to make them without alleging any supporting facts. Plaintiff's complaint leaves the Court with many critical questions unanswered, and such questions render the complaint fatally implausible.

---

deposit. Assignment of benefits by victim and the fact that funds would have been deposited anyway makes fraudulent intent unclear." [DE 32-1, 32-2, 32-3, and 32-4].

[2] "Upon information and belief, partly because of Plaintiff's numerous, caustic, accusatory, and annoying administrative complaints to the Department of Insurance, and partly because of the insurance industry's dismay at watered-down profits, the Department decided to "shut [Plaintiff] down." Arresting Plaintiff on 108 felony counts appeared to Defendants to be a way to appease the insurance industry and put Plaintiff out of business." [DE 35 at 12].

7

Plaintiff also alleges that defendants did not know, or should not have known, that plaintiff did not possess the requisite specific intent to cheat or deceive necessary to sustain a conviction for obtaining property by false pretenses. Plaintiff essentially argues, in conclusory fashion, that defendants knew or should have known that there was no evidence of specific intent to defraud customers, and that because there was no evidence of false representation, the arrests were without probable cause. Plaintiff offers no specific factual allegations to show that defendants had this presence of mind, but instead apparently argues that the fact that the charges were dismissed necessarily infers that defendants knew or should have known at the time of the arrest that the charges would not be later sustained. But this directly contradicts settled law which states that a later dismissal does not eliminate probable cause at the time of the arrest. The fact of dismissal adds little to an analysis of whether probable cause existed at the time of the arrest.

Additionally, a probability of illegal activity, rather than a definitive showing of illegal activity or proof of guilt, is sufficient for a finding of probable cause. *Biber*, 712 S.E.2d at 879. Therefore, even accepting plaintiff's conclusory allegation that the DOI did not know beyond a reasonable doubt whether plaintiff had the specific intent to deceive does not defeat probable cause. The fact that the evidence did not in the end rise to the level of beyond a reasonable doubt does not establish that it was unreasonable for the DOI to have suspected plaintiff of such criminal activity in the first instance. Under plaintiff's theory of the Fourth Amendment, any individual accused, or even investigated, of a crime by the state but not ultimately convicted in court could sue the state for damages. Such a system would be unworkable. The standard instead is that such individuals can only receive damages when the arrest was unjustified, and an unjustified arrest is one effected without probable cause.

The Court is not convinced here that such probable cause was lacking at the time plaintiff was arrested on 108 counts of obtaining property by false pretenses, considering the extensive investigations into plaintiff's businesses, the averments of investigators that plaintiff's customers did not receive repairs charged by plaintiff,[3] the fact that plaintiff was arguably operating as a public adjuster without proper licensing (as plaintiff's own allegations admit), the lack of any factual allegations of actual instances of collusion between the insurance industry and the DOI which plaintiff alleged was the motivation behind his investigations and arrest, the fact that the charges were ultimately dismissed not because of lack of probable cause but because of insufficient evidence, and the fact that an independent magistrate determined that there was probable cause for plaintiff's arrest.[4] As a result, the Court finds that plaintiff has not pled sufficient facts to show that he was arrested unlawfully or that any of his constitutional rights were violated during as a result of his arrest.

---

[3] Defendant Garmon's limited scope interrogatory answers were attached to the motion to dismiss and are integral to plaintiff's complaint. Garmon stated, regarding her investigation into plaintiff's activity, that she "interviewed a number of homeowners who did not get the roof repairs promised to them by Plaintiff or Plaintiff's companies." [DE 83-1].

[4] The letter from Assistant Attorney General Kirby to plaintiff's lawyer attached to plaintiff's second amended complaint elucidates the circumstances of the DOI's investigation into plaintiff's business activities. According to the letter, plaintiff's billings practices to his customers and his customers' insurance companies included invoices and explanation of charges indicating that plaintiff charged the insured $310 per hour for rendering "legal preparation" or "paralegal and paperwork." [DE 76-2 at 18]. These bills added up to more than $10,000 dollars for some of plaintiff's customers and their insurers. *Id.* at 18-19. Regarding the justification for DOI's licensing investigation, the letter stated: "Mr. Pierce's statements about licensure, his abandoned attempts to obtain entity licenses, in conjunction with evidence indicating that Mr. Pierce has acted and held himself and Clear Choice out as a public adjuster, appear to show an intent to circumvent the public adjuster license requirements through purported assignments of claims. For this reason, the Department questioned the validity of the assignments to the named insureds." *Id.* at 21. Regarding the legality of such activity, the letter stated that there is not "any case decided by the appellate courts in North Carolina specifically addressing this issue. Thus, until this issue is resolved by an appellate court, it remains a matter of legal opinion. . . . Nevertheless, the validity of any assignment depends upon the language of the given insurance policy regarding assignments and, if contested by the insurer, is an issue to be ultimately decided by the courts." *Id.*

Plaintiff also appears to claim that he was deprived of some constitutional right by reason of the investigation into whether he was acting as an adjuster without a license. To the extent plaintiff makes a claim that he was deprived of a constitutional right by way of that investigation, this claim fails. Plaintiff admits that he was never charged with the misdemeanor of acting as an adjuster without a license. [DE 35 at 8]. This investigation affected no stop or seizure implicating the Fourth Amendment and deprived the plaintiff of no liberty or property under the protections of due process.

Also determinative in this case is that fact that individual defendants are, as officials of a state agency, subject to qualified immunity. Qualified immunity protects government officials from suit for damages when their conduct does not violate a "clearly established" constitutional right. *Evans*, 703 F.3d at 646. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). To prevail on a motion to dismiss made on qualified immunity grounds, a plaintiff must allege a violation of a right that is clearly established at the time of the violation. *Evans*, 703 F.3d at 646. Unless plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). For the reasons stated above—because plaintiff fails to plead sufficient facts showing a lack of probable cause in his arrest, and because plaintiff has failed in any other way to show how individual defendants' conduct violated plaintiff's clearly established constitutional rights—the complaint should also be dismissed because plaintiff has failed to overcome individual defendants' qualified immunity.

*Motion to Amend*

Plaintiff also filed a motion requesting leave to amend his complaint a second time. The decision to allow leave to amend a pleading rests within the discretion of the trial court and should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be denied only when the amendment would be prejudicial to the opposing party, when there has been bad faith on the part of the moving party, or when the amendment would be futile. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards. *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011). Thus, the standard guiding whether leave to amend would be futile is largely the same as the standard the Court applies under a Rule 12(b)(6) motion for failure to state a claim analysis.

Plaintiff seeks leave to amend his complaint to add Ben Tesh, defendant Garmon's supervisor, as a defendant. Doing so does nothing to make plaintiff's claims more plausible or address the inadequacies in the complaint as discussed above. Plaintiff's proposed second amended complaint mirrors the allegations and claims made in the first amended complaint, and, for the reasons stated above, neither complaint states a claim upon which relief can be granted. Therefore, the Court finds that such an amendment would be futile and leave to amend should be denied.

*Motion for Sanctions*

Finally, plaintiff submitted a motion for sanctions under Rule 26(g) of the Federal Rules of Civil Procedure. Plaintiff claims that Ms. Stanford and Mr. Johnson, counsel for the individual defendants, engaged in civil discovery violations by certifying the discovery responses of Shane Guyant and Angela Hatchell which they knew or should have known to be false. Defendants

11

Guyant and Hatchell responded to interrogatories by indicating they did not take part in the criminal investigation of plaintiff.[5] Plaintiff claims this is false, because Guyant wrote an email to other individuals in the DOI saying that he received a call from an attorney in Charlotte about plaintiff who had some "new information that will benefit CID." [DE 84-1]. Plaintiff similarly claims Hatchell lied when, in an email she sent to plaintiff in 2013, warned plaintiff that his activities violated certain North Carolina statutes. *Id.* Plaintiff claims these emails show that Guyant and Hatchell were involved in the criminal investigation of plaintiff and that they therefore lied in discovery. *Id.*

The Court finds this motion to be without merit. Individual defendants submitted adequate evidence demonstrating that criminal investigations are handled solely by the Criminal Investigation Division ("CID") of the DOI, that the investigation into plaintiff was assigned to defendant Garmon, and that only Garmon participated in and directed the criminal investigation into plaintiff's business activities. [DE 88]. Hatchell was a member of the Agent Services Division ("ASD") of the DOI, which is responsible for the administrative regulation of licensed

---

[5] In her discovery interrogatory answers, defendant Hatchell submitted the following response:
"QUESTION: Did you participate, in any way, either directly or indirectly, in the criminal investigation, arrest, or prosecution of Ronald Leonard Pierce?
ANSWER: No. Criminal investigations and prosecutions are handled by the Criminal Investigations Division (CID) of the Department of Insurance and I have never been a member of the CID." [DE 84-5 at 2].

Similarly, Guyant responded with the following: "QUESTION: Did you participate, in any way, either directly or indirectly, in the criminal investigation, arrest, or prosecution of Ronald Leonard Pierce?
ANSWER: No. I was not personally involved in the criminal investigation, arrest, or criminal prosecution of Plaintiff Pierce. I am employed in the Criminal Investigations Division (CID) of the Department of Insurance which handles criminal investigations and prosecutions. CID Investigators are experienced law enforcement officers who use judgment, in consultation with prosecuting attorneys, to determine whether there is sufficient evidence to bring a criminal charge. I became the Director of CID on March 1, 2013. While the Director position has indirect supervisory authority over the Investigators, each Investigator has a direct supervisor who has familiarity with the Investigator's workload." [DE 84-5 at 6].

agents, adjusters, and other licensees. *Id.* The DOI interacted with plaintiff on a variety of matters in the course of licensing, filing and responding to complaints, and the opening of both regulatory and criminal investigations. *Id.* Defendants have shown that DOI's administrative and licensing operations are separate and distinct from its criminal investigations responsibilities. *Id.* The fact that Hatchell mentioned in a regulatory cease and desist letter that acting as an unlicensed public adjuster is a misdemeanor in North Carolina does not show that she criminally investigated plaintiff.

Similarly, the Court is not persuaded by plaintiff's proffer of the email from defendant Guyant that he gave a false answer in response to plaintiff's interrogatories. Guyant was the director of CID, and at one time received information regarding the investigation into plaintiff, but the Court is not persuaded a single email showing that he was present for an interview of a criminal witness means that he thereby was personally involved in the criminal investigation. Additionally, defendants submitted evidence showing that it was defendant Garmon who interviewed the attorney referenced in the email. [DE 88-5 at ¶ 11]. While Guyant was present during Garmon's interview of the attorney, under the understanding of the attorneys in the CID, Guyant's presence during the interview did not make him a participant in Garmon's criminal investigation of plaintiff. *Id.*

As a result, the Court is persuaded that Guyant and Hatchell did not criminally investigate Plaintiff and that their interrogatory answers are truthful. Therefore, plaintiff's motion for sanctions is denied.

## CONCLUSION

For the reasons stated above, defendants' motion to dismiss [DE 39] is GRANTED, and plaintiff's motion for leave to file a second amended complaint [DE 76] and motion for sanctions [DE 84] are DENIED. Plaintiff's motion for hearing [DE 89] is GRANTED by reason of the hearing held on November 8, 2011. The Clerk is DIRECTED to enter judgment accordingly and to close the file.

SO ORDERED, this _12_ day of December, 2016.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE